UNITED STATES DISTRICT COURT
EASTERN DISTRICT OF KENTUCKY
CENTRAL DIVISION
LEXINGTON

CIVIL ACTION NO. 08-11

RICK O'BRYAN,     PLAINTIFF,

V.     MEMORANDUM OPINION AND ORDER

CONSOL ENERGY, INC. , AND
LIBERTY LIFE ASSURANCE COMPANY
OF BOSTON,     DEFENDANTS.

\* \* \* \* \* \* \* \* \* \*

This matter is before the court upon the plaintiff's motion to alter or amend the court's March 10, 2010, order, or for a new trial. R. 34. The motion will be denied because the plaintiff's proffered evidence is not "newly discovered."

This case arises from the termination of Rick O'Bryan's benefits under a long-term disability ("LTD") benefits plan. The plan was administered by his employer, CONSOL Energy, Inc., and Liberty Life Assurance Company of Boston served as the third-party administrator. O'Bryan's disability claim was initially approved under the "Limitations for Mental Illness" provision of the plan. Consol paid benefits for the twelve-month period permitted in that provision and then for additional time under a reservation of rights while Liberty continued reviewing his claim. As part of this process, O'Bryan's medical file was reviewed by Dr. Amy Hopkins. Ultimately, the defendants terminated O'Bryan's LTD benefits because there was insufficient

1

medical evidence supporting his claim of physical restrictions or limitations to satisfy the plan's definition of disability (i.e., that he was unable to engage in any suitable employment). After exhausting his administrative remedies, O'Bryan filed suit in state court and the defendants removed the case to this court.

On March 10, 2010, this court denied O'Bryan's motion to reverse the administrative decision. R. 32. This court determined that "[b]ecause Consol and Liberty reviewed O'Bryan's claim in a 'deliberate' and 'principled' fashion, the defendants did not arbitrarily and capriciously deny him long-term disability benefits under the terms of the plan." This conclusion was based, in part, on Dr. Hopkins's review of O'Bryan's medical records. *Id.* at 15-16. Shortly thereafter, an attorney named Susan Horner sent the results of a private "investigation" of Dr. Hopkins to O'Bryan's counsel. R. 34. O'Bryan now seeks to have the order set aside based on this information.

O'Bryan's attempt to overturn this court's earlier judgment fails because the information proffered is not "newly discovered" within the meaning of the rules. Parties requesting relief under Rules 59 or 60[1] based on newly discovered evidence must meet two primary requirements. First, they must show that they exercised

---

[1] Under the circumstances, the distinction between Rules 59 and 60 is irrelevant. Both allow a court to grant relief based on newly discovered evidence. Accordingly, the "elements that the moving party needs to prove are very similar...Courts have noted that Rule 60(b)(2) cases may be cited in support of Rule 59 motions, and vice versa." 12 *Moore's Federal Practice* § 60.42[1][a] (3d ed.). *See also id.* at § 59.13[2][d][i]. While the plaintiff is correct that courts can alter a judgment under Rule 59 for reasons other than newly discovered evidence, he has made clear that *his* basis for requesting relief is newly discovered evidence. R. 34 at 1 ("Under FRCP 59, O'Bryan now asks the Court to alter or amend the Opinion and Order, or for new trial, *based on newly discovered evidence*.") (emphasis added). *See also id.* at 3-4.

2

due diligence yet still were unable to uncover the evidence earlier. Second, they must show that "the evidence is material and controlling and clearly would have produced a different result if presented before the original judgment." *Good v. Ohio Edison Co.*, 149 F. 3d 413 (6th Cir. 1998) (citations omitted).  Both prongs present a problem for the plaintiff.

First, the information about Dr. Hopkins was previously available through the exercise of due diligence. *GenCorp, Inc. v. Am. Int'l Underwriters*, 178 F.3d 804, 834 (6th Cir. 1999). All of the information discovered by attorney Susan Horner could have been discovered by O'Bryan. The Horner affidavit details her investigation of Dr. Hopkins.  R. 35, Exh. 1, at 3-22.  In short, Horner began her inquiry on LEXIS, identified cases in which Dr. Hopkins did not support a disability finding, and used various methods, including directly following up with individual claimants' attorneys, to gather reports prepared by Dr. Hopkins. *Id.*  O'Bryan has not demonstrated why he could not have, in the exercise of due diligence, taken similar steps and thereby uncovered the same or similar information gathered by Horner. *See, e.g., Emmanuel v. Int'l Bhd. of Teamsters, Local Union No. 25*, 426 F.3d 416, 422 (1st Cir. 2005) (indicating that evidence that was publicly available on the internet did not qualify as newly discovered); *Kissinger-Ison Co. v. Bradford Belting Co.*, 123 F. 91 (6th Cir. 1903) (holding that evidence was not newly discovered where the party's earlier attempts to locate it were insufficiently diligent).

3

O'Bryan's belated attempts to show due diligence are unpersuasive. In his reply brief, his counsel states that although he conducted a Westlaw search of Dr. Hopkins, he "did not become aware of Attorney Horner's declaration." However, that he did not uncover the declaration itself is irrelevant. The question is whether he could have uncovered similar evidence of bias. O'Bryan unquestionably could. A simple Westlaw search of federal cases using the terms "Amy Hopkins" and "ERISA" produces 37 results. Among these is *Solomon v. Metropolitan Life Ins. Co.* 628 F. Supp.2d 519, 530 (S.D.N.Y. 2009). The court in *Solomon* noted that Hopkins's independence is questionable given that 99% of her income is derived from paper medical reviews. Further, the plaintiff's motions, available on PACER, go to great lengths to discredit Dr. Hopkins, even emphasizing her use of cookie-cutter language. *See Pl.'s Opp'n to Def.'s Mot. for Summ. J.*, 4, 17-18, ECF No. 50-15. Other cases revealed similar critiques of Dr. Hopkins' methods and independence.[2] These decisions were publicly available and easily discovered by an online search. A diligent plaintiff could have discovered them and followed up with the parties, if necessary. Therefore, the Horner Declaration is not newly discovered within the meaning of Rule 59.

Second, the plaintiff has failed to show that the evidence would have

---

[2]*See, e.g.*, *Slomcenski v. Citibank, N.A.* 432 F.3d 1271, 1275 (11th Cir. 2005) (quoting a report of Dr. Hopkins that uses some of the same language criticized by O'Bryan as "cookie-cutter"); *Wright v. Raytheon Co.*, 2008 WL 4386728 at *3 (D. Ariz. Sep. 17, 2008) (noting that Dr. Hopkins received remuneration of $498,832.51 from one insurer between 2001 and 2004); *Gothard v. Metropolitan Life Ins. Co.*, 491 F.3d 246, 248-49 (5th Cir. 2005); *Lewis v. American Express Co.*, 2007 WL 2274767 at *6 (N.D. Ga. August 7, 2007).

4

produced a different outcome. *See Good*, 149 F. 3d 413. While the evidence about Dr. Hopkins likely would have entitled the plaintiff to further discovery, on its own, the information about Dr. Hopkins would not have affected the decision to uphold the administrative determination.

O'Bryan failed to make any showing of bias prior to this court's denial of his claim on March 10, 2010. *See* R. 32 at 10. Although review of an order denying disability benefits under ERISA is typically confined to the administrative record, s*ee Perry v. Simplicity Engineering*, 900 F.2d 963, 966 (6th Cir. 1990), there is a narrow exception for evidence of bias. See *Wilkins v. Baptist Healthcare System, Inc.*, 150 F.3d 609, 619 (6th Cir. 1998). District courts relying on *Wilkins* have allowed discovery into the doctors hired to review the medical records of disability claimants. *See, e.g., Bennett v. Unum Life Ins. Co.*, 321 F. Supp.2d 925 (E.D. Tenn. 2004)*.* However, most of these courts require a "predicate showing" of bias before wholesale discovery is allowed. *Bennett*, 321 F. Supp.2d at 931-33; *McQueen v. Life Insurance Company of N. Am*., 2008 U.S. Dist. LEXIS 16657 (E.D. Ky. Mar. 4, 2008). *But see Myers v. Prudential Ins. Co.*, 581 F. Supp.2d 904, 912-14 (E.D. Tenn. 2008).

Even if O'Bryan had produced the declaration, it would not have affected the order. Although it may have been a sufficient "predicate showing" to warrant more discovery, it does not prove bias on the part of Dr. Hopkins against O'Bryan. *See Good*, 149 F.3d at 423; *Hayes v. Norfolk Southern Corp.*, 25 Fed. Appx. 308,

313, 315 (6th Cir. 2001). For one thing, none of the reports examined by Horner were prepared for Consol. Hence, even if the declaration were evidence of bias on the part of Dr. Hopkins, it would be bias toward entirely different entities. It is not enough to assert, with no factual support, that her relationship to Consol automatically includes similar biases against claimants. For this reason, the Horner Declaration has only minimal relevance to O'Bryan's claim.

In addition, the fact that Dr. Hopkins uses "cookie-cutter" statements in her reports is not necessarily evidence of bias. Given the sheer number of reviews conducted by Dr. Hopkins, it is not surprising that there would be such linguistic similarities. O'Bryan provides no indication that the "cookie-cutter" statements were not accurate assessments of the medical conditions being analyzed. Nor does he provide any new evidence that such statements were not accurate assessments of *his* conditions. The use of similar phraseology could reflect similar medical conditions, or even laziness on the part of Dr. Hopkins. However, it is not, standing alone, evidence of bias.

Finally, Horner was able to obtain only a small fraction of the hundreds of reports prepared by Dr. Hopkins. R. 34 Ex. 1 at 5 (noting that Dr. Hopkins reviewed 400-500 files a year for one insurer). There is no evidence that the reports examined by Horner are at all representative of the many that were not examined. Thus, while the plaintiff attempts to draw broad conclusions about *all* of Dr. Hopkins' reports (including his own), *see id.* at 2, 5, there is no basis for such

generalizations.

Accordingly, **IT IS ORDERED** that Rick O'Bryan's motion to alter or amend the court's order, or for a new trial (R. 34) is **DENIED.**

Signed on October 14, 2010

JENNIFER B. COFFMAN, CHIEF JUDGE
UNITED STATES DISTRICT COURT
EASTERN DISTRICT OF KENTUCKY